## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| UTGR, INC. d/b/a TWIN RIVER, <u>et al.</u>,[1] | ) | Case No. 09-12418 (ANV) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF
## LAW, AND ORDER CONFIRMING DEBTORS'
## SECOND AMENDED JOINT PLAN OF REORGANIZATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors in possession (collectively, the "<u>Debtors</u>"), having:[2]

a. on June 23, 2009 (the "<u>Petition Date</u>"), commenced these chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>");

b. continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on December 15, 2009, the Debtors' Disclosure Statement Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 444] and the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 445];

d. filed, on December 15, 2009, the Supplement to Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 446] (the "<u>Plan Supplement</u>"), and with amendments to exhibits to the Plan Supplement filed thereafter;

e. filed, on December 15, 2009, the Debtors' Motion for Entry of an Order (I) Approving Disclosure Statement, (II) Establishing Record Date for Voting on Plan of Reorganization, (III) Approving Solicitation Packages and Procedures for Distribution Thereof, (IV) Approving Forms of Ballots and Manner of Notice, (V) Establishing Procedures for Voting on Plan and (VI) Establishing Notice and

---

[1]    The Debtors in these chapter 11 cases are BLB Management Services, Inc., BLB Worldwide Holdings, Inc., and UTGR, Inc.

[2]    Unless otherwise noted, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code, filed February 10, 2010 [Docket No. 529] (as may be subsequently modified, supplemented, and amended, the "<u>Plan</u>").  The rules of interpretation set forth in Article I.B of the Plan shall apply to the Confirmation Order.

Objection Procedures for Confirmation of Plan [Docket No. 443] (the "Disclosure Statement Motion");

f. filed, on January 22, 2010, the Debtors' First Amended Disclosure Statement Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 479] and the Debtors' First Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 483];

g. filed, on January 26, 2010, the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 487] and the Debtors' Second Amended Disclosure Statement Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 489];

h. published, on February 9, 2010, notice of the Confirmation Hearing (the "Confirmation Hearing Notice") in The Providence Journal, in accordance with the Disclosure Statement Order, as evidenced by Certificate of Service of the Affidavit of Publication, filed by Donlin, Recano and Company, Inc. ("Donlin Recano") on February 10, 2010 [Docket No. 530] (the "Publication Affidavit");

i. filed, on February 10, 2010, Notice of Filing of Materials Included in Solicitation Packages and Errata Sheet [Docket No. 528];

j. filed, on February 10, 2010, the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 529], for the purpose of showing the non-material modifications noted on the errata sheet and having on file the final version of the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code that was included in the Solicitation Packages;

k. filed, on February 13, 2010, the Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Debtors' Second Amended Disclosure Statement Pursuant to Chapter 11 of the Bankruptcy Code [Docket Nos. 544, 545] (the "Donlin Affidavit");

l. filed, on February 26, 2010, the Debtors' Motion for Entry of an Order Waiving Certain Requirements Under Local Bankruptcy Rule 3020-1[Docket No. 572];

m. served, on March 5, 2010, upon counterparties to executory contracts, a notice (i) setting forth the amount the Debtors have determined required to cure all defaults under the executory contract, (ii) describing the procedures for filing objections thereto, (iii) explaining the process by which related disputes will be resolved by the Court, and (iv) explaining the consequences of not timely filing an objection thereto (the "Cure Notice");

n. filed, on March 9, 2010, the Reorganizing Debtors' Memorandum of Law In Support of Confirmation of Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 586] (the "Plan Confirmation Brief");

o. filed, on March 9, 2010, the Declaration of George Papanier in Support of Confirmation of Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 587] (the "Papanier Declaration");

p. filed, on March 9, 2010, the Declaration of Matthew Whiting in Support of Confirmation of Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 587] (the "Whiting Declaration");

q. filed, on March 9, 2010, the Affidavit of Ronald Howard Certifying the Ballots Accepting or Rejecting the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 588] (the "Voting Certification") detailing the results of the Plan voting process;

r.  filed, on March 9, 2010, the Chapter 11 Confirmation Worksheet and Certification [Docket No. 589];

s.  filed, on March 9, 2010, Exhibits 1, 2, and 8 to the Plan Supplement [Docket No. 590]; and

t.  filed, on April 13, 2010, Exhibit 4 to the Plan Supplement [Docket No. 638].

This Court having:

a.  entered, on January 28, 2010, the Order (I) Approving Disclosure Statement, (II) Establishing Record Date for Voting on Plan of Reorganization, (III) Approving Solicitation Packages and Procedures for Distribution Thereof, (IV) Approving Forms of Ballots and Manner of Notice, (V) Establishing Procedures for Voting on Plan and (VI) Establishing Notice and Objection Procedures for Confirmation of Plan [Docket No. 493] (the "Disclosure Statement Order"), which also approved, among other things, solicitation procedures (the "Solicitation Procedures") and related notices, forms, and Ballots (collectively, the "Solicitation Packages");

b.  entered, on March 8, 2010, the Order Waiving Certain Requirements Under Local Bankruptcy Rule 3020-1 [Docket No. 583], relieving the Debtors from the Local Bankruptcy Rule 3020-1(a)(2) requirement to file a distribution order within seven days of a hearing on confirmation of a plan of reorganization;

c.  set June 23, 2010, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.  reviewed the Plan, the Disclosure Statement, the Plan Confirmation Brief, the Papanier Declaration, the Whiting Declaration, the Voting Certification, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

e.  heard the statements, arguments, and any objections made by counsel in respect of Confirmation;

f.  considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation; and

g.  taken judicial notice of the papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief

granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Order:[3]

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

A.    Jurisdiction and Venue.

1.    Beginning on the Petition Date, the Debtors commenced the Chapter 11 Cases. Venue in the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court") was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334.   The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    Eligibility for Relief.

2.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

C.    Commencement and Joint Administration of the Chapter 11 Cases.

3.    On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  By prior order of the

---

[3]    The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Court, the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy

Rule 1015 [Docket No. 27].  The Debtors have operated their businesses and managed their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

D.    <u>Plan Supplement.</u>

4.    On December 15, 2009, the Debtors filed the Plan Supplement.  The Debtors have

subsequently filed certain amendments and additional exhibits to the Plan Supplement.  The Plan

Supplement complies with the terms of the Plan, and the filing and notice of such documents

were good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the

Disclosure Statement Order, and no other or further notice is or shall be required.  The Debtors

are authorized to modify the Plan Supplement following entry of the Confirmation Order in

accordance with the terms of the Plan.

E.    <u>Modifications to the Plan.</u>

5.    Any modifications to the Plan described or set forth herein constitute technical

changes or changes with respect to particular Claims by agreement with Holders of such Claims,

and do not materially or adversely affect or change the treatment of any other Claims or

Interests.  Pursuant to Bankruptcy Rule 3019, these modifications do not require additional

disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section

1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be

afforded an opportunity to change previously cast acceptances or rejections of the Plan.

F.    <u>Judicial Notice.</u>

6.    The Bankruptcy Court takes judicial notice of (and deems admitted into evidence

for Confirmation) the docket of the Chapter 11 Cases and any related adversary proceedings and

appeals maintained by the clerk of the applicable court or its duly appointed agent, including all

pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Cases.  All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

G.    Disclosure Statement Order.

7.    On January 28, 2010, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things:  (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) established January 29, 2010, as the Record Date (as defined in the Disclosure Statement Order); (c) established March 3, 2010 at 5:00 p.m. (prevailing Eastern Time) as the deadline for voting to accept or reject the Plan (the "Voting Deadline"); (d) established March 9, 2010 at 5:00 p.m. (prevailing Eastern Time) as the deadline for objecting to the Plan; (e) established March 16, 2010, at 1:00 p.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing;[4] (e) approved the Solicitation Procedures and the Solicitation Package; and (f) approved the form and method of notice of the Confirmation Hearing Notice set forth therein.

H.    Transmittal and Mailing of Materials; Notice.

8.    As evidenced by the Donlin Affidavit, due, adequate, and sufficient notice of the Disclosure Statement, Plan, and Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given to:  (a) all persons or entities that filed (or were deemed to have filed, by order of the Bankruptcy Court) Proofs of Claim on or before the Record Date,

---

[4]    The date and time for the commencement of the Confirmation Hearing has since been continued by order of the Court to June 23, 2010 at 10:00 a.m. (prevailing Eastern Time) [Docket No. 687].

except to the extent a Claim was paid pursuant to, or expunged by, a prior order of the Bankruptcy Court; (b) all persons or entities listed in the Debtors' schedules of assets and liabilities, filed on August 22, 2009 [Docket Nos. 246-251] as holding liquidated, noncontingent, and undisputed Claims in an amount greater than zero; (c) the registered holders of the Debtors' debt and equity securities; and (d) parties that requested notice in accordance with Bankruptcy Rule 2002, in compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017, and 3020(b), and no other or further notice is or shall be required. Adequate and sufficient notice of the Confirmation Hearing, as may be continued from time to time, and any applicable bar dates and hearings described in the Disclosure Statement Order was given in compliance with the Bankruptcy Rules and Disclosure Statement Order, and no other or further notice is or shall be required.

9.      The Debtors published the Confirmation Hearing Notice once in The Providence Journal, in compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(l) on February 9, 2010, as evidenced by the Publication Affidavit.

I.      Solicitation.

10.      Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations. Specifically, the Solicitation Packages approved by the Bankruptcy Court in the Disclosure Statement Order (including the Disclosure Statement, the Plan, the Ballots, and the related notices) were transmitted to and served on all Holders of Claims in Classes that were entitled to vote to accept or reject the Plan and relevant portions of the Solicitation Packages were transmitted to and served on other parties in interest in the Chapter 11 Cases, all in compliance with section 1125 of

the Bankruptcy Code, the Disclosure Statement Order, the Solicitation Procedures, and the Bankruptcy Rules.  Transmittal and service were adequate and sufficient, and no further notice is or shall be required.  In addition, Holders of Claims or Interests in Classes that were not entitled to vote to accept or reject the Plan were provided with certain non-voting materials approved by the Bankruptcy Court in compliance with the Disclosure Statement Order.  Pursuant to the Disclosure Statement Order, the Debtors were excused from distributing Solicitation Packages to those entities at addresses from which Disclosure Statement Hearing notices were returned as undeliverable by the United States Postal Service unless the Debtors were provided with or otherwise located accurate addresses for such entities prior to the Solicitation Date, and failure to distribute Solicitation Packages to such entities does not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d).  All procedures used to distribute Solicitation Packages to Holders of Claims were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

J.    Voting Certifications.

11.    Prior to the Confirmation Hearing, the Debtors filed the Voting Certification.  All procedures used to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

12.    As set forth in the Plan and Disclosure Statement, Holders of Claims in Classes A-1, A-2, A-5, B-1, B-2, B-5, C-1, C-2, C-5, and C-6 (collectively, the "Voting Classes") are eligible to vote on the Plan pursuant to the Solicitation Procedures.  In addition, Holders of Claims in Classes A-3, A-4, A-6, B-3, B-4, B-6, C-3, C-4, and C-7 and Holders of Equity Interests in Classes B-7 and C-8 are Unimpaired and deemed to accept the Plan and, therefore,

are not entitled to vote to accept or reject the Plan.  Holders of Interests in Class A-7 are deemed

to reject the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

13.    As evidenced by the Voting Certification, all Voting Classes voted to accept the

Plan.

K.    <u>Bankruptcy Rule 3016.</u>

14.    The Plan is dated and identifies the Entities submitting it, thereby satisfying

Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the clerk of the

Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

L.    <u>Burden of Proof.</u>

15.    The Debtors, as proponents of the Plan, have met their burden of proving the

elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the

evidence, which is the applicable evidentiary standard for Confirmation.

M.    <u>Compliance with the Requirements of Section 1129 of the Bankruptcy Code.</u>

16.    The Plan complies with all applicable provisions of section 1129 of the

Bankruptcy Code as follows:

**1.    Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

17.    The Plan complies with all applicable provisions of the Bankruptcy Code as

required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

**(i)    Sections 1122 and 1123(a)(1)—Proper Classification.**

18.    The classification of Claims and Interests under the Plan is proper under the

Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code,

Articles III, IV, and V of the Plan provide for the separate classification of Claims and Interests

into 22 Classes, based on differences in the legal nature or priority of such Claims and Interests

(other than Administrative Expense Claims and Priority Tax Claims, which are addressed in Article II of the Plan, and which are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Each of the Claims or Interests within a particular Class are of equal rank and are substantially similar to one another.

19.    In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code have been satisfied.

### (ii)    Section 1123(a)(2)—Specification of Unimpaired Classes.

20.    Article IV of the Plan specifies that Holders of Claims in Classes A-3, A-4, A-6, B-3, B-4, B-6, C-3, C-4, and C-7 and Holders of Equity Interests in Classes B-7 and C-8 are Unimpaired under the Plan. Additionally, Article II of the Plan specifies that Administrative Expense Claims and Priority Tax Claims are Unimpaired, although these Claims are not classified under the Plan. Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### (iii)    Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

21.    Article IV of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes A-1, A-2, A-5, B-1, B-2, B-5, C-1, C-2, C-5, and C-6, and Holders of Interests in Class A-7. Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### (iv)    Section 1123(a)(4)—No Discrimination.

22.    Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article IV of the Plan uniformly provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable

treatment with respect to such Claim or Interest.  Accordingly, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

### (v)  Section 1123(a)(5)—Adequate Means for Plan Implementation.

23.  Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article VI (Provisions for Implementation of the Plan) and various other provisions of the Plan provide adequate means for the Plan's implementation, thus satisfying the <u>fifth</u> requirement of 11 U.S.C. § 1123(a).  More specifically, Article VI of the Plan provides, among other things:

- the sources of consideration for distributions under the Plan;

- the authorization and issuance of new equity in the Reorganized Debtors and the reinstatement of certain Intercompany Interests;

- the designation of the First Lien Agent and Second Lien Agent, respectively, as the holders of all First Lien Facility Claims or Second Lien Facility Claims, respectively, for purposes of any distributions to be made thereunder;

- the authorization for the Reorganized Debtors to execute and deliver those documents necessary or appropriate to obtain the New Senior Secured Credit Facility;

- the authorization for the Reorganized Debtors to execute and deliver those documents necessary or appropriate to obtain the discharge and termination of the Second Lien Facility;

- the continuation of the corporate existence of the Debtors;

- the vesting of assets in the each of the Reorganized Debtors;

- the cancellation of certain securities and agreements;

- the discharge of the Debtors;

- the authorization of the Reorganized Debtors to take all actions as may be necessary or appropriate to effectuate the Plan;

- the exemption from certain transfer taxes and recording fees;

- the appointment of officers and directors of the Reorganized Debtors;

- the employment of the same President and General Counsel of the Reorganized Debtors as was in place at the time of the filing of the Plan;

- the honoring of employee and retiree benefits;

- the creation of the Holdback Escrow Account to reserve an amount necessary to pay all of the Accrued Professional Compensation;

- the maintenance of Causes of Action and the preservation of all Causes of Action not expressly settled or released; and

- the assurance the Reorganized Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments pursuant to the terms of the Plan.

24.      Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

### (vi)      Section 1123(a)(6)—Voting Power of Equity Securities.

25.      Article 4 of the Amended and Restated Certificates of Incorporation of each of the Reorganized Debtors, in the forms attached as Exhibit 2 to the Plan Supplement, prohibit the issuance of non-voting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

### (vii)      Section 1123(a)(7)—Selection of Officers and Directors.

26.      The identity and affiliations of the members of the initial Board of Directors of the Reorganized Debtors are listed in the Disclosure Statement and in Exhibit 8 to the Plan Supplement.  The Amended and Restated Certificate of Incorporation of each of the Reorganized Debtors describes the manner of the selection of the remaining members of the initial Board of Directors of the Reorganized Debtors.  Pursuant to Article VI.O of the Plan, the President and General Counsel of the Reorganized Debtors shall be the same as the President and General Counsel of the Debtors on the date the Plan was originally filed.  The selection of the initial directors and officers of the Reorganized Debtors was and is consistent with the interests of Holders of Claims and Interests and public policy.  Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

(viii)    **Section 1123(b)—Discretionary Contents of the Plan.**

27.    The Plan contains various provisions that may be construed as discretionary, but are not required for Confirmation under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, section 1123(b) of the Bankruptcy Code is satisfied.

(a)    **Section 1123(b)(1)-(2)—Claims and Executory Contracts.**

28.    Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, Article IV of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, and Article VII of the Plan provides for the assumption, assumption and assignment, or rejection of the Executory Contracts of the Debtors not previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and appropriate authorizing orders of the Bankruptcy Court.

(b)    **Section 1123(b)(3) —Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action.**

29.    **Releases by the Debtors**.  The releases and discharges of Claims and Causes of Action by the Debtors described in Article X.C of the Plan (the "Debtor Releases") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtors' business judgment and is in the best interest of the estate.  In turn, pursuing any such claims against the Debtor Releasees is not in the best interest of the Debtors' estates' various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims.

30.    **Third Party Releases**.  The circumstances of these Chapter 11 Cases are unique and unusual and they render the releases of Claims and Causes of Action by Holders of Claims and Interests described in Article X.D of the Plan (the "Third Party Release") important to the

success of the Plan.  Most importantly, the Third Party Releases are proper under the standard

typically applied to third party releases in the First Circuit.

      31.    Specifically, the Third Party Releases are proper because: (a) the non-Debtor

releasees have contributed substantial assets to the reorganization in the form of continued

service to the Debtors as directors without any requirement to do so and, in the Debtors'

prepetition sponsors' case, with the knowledge that their equity interests would be wiped out and

they would receive no recovery under the Plan, and, with respect to the First Lien Agent, the

New Senior Secured Credit Facility and various material settlements embodied in the Plan; (b)

the injunction is essential to the reorganization; (c) a substantial majority of the creditors agree to

such injunction, specifically, the impacted classes have overwhelmingly voted to accept the

proposed Plan treatment; and (d) the Plan provides a mechanism for the payment of all, or

substantially all, of the claims of the class or classes affected by the injunction.

      32.    **Injunction**.  The injunction provisions set forth in Article X.E of the Plan are

essential to the Plan and are necessary to preserve and enforce the Debtor Releases, the Third

Party Releases, and the exculpation provisions in Article X of the Plan, and are narrowly tailored

to achieve that purpose.

      33.    **Exculpation**.  The exculpation provisions set forth in Article X.F of the Plan are

essential to the Plan.  The record in the Chapter 11 Cases fully supports the Exculpation and the

Exculpation provisions set forth in Article X.F of the Plan are appropriately tailored to protect

the Exculpated Parties from inappropriate litigation.  The Exculpation shall have no effect on the

liability of any Entity that results from any such act or omission that is determined in a final

order to have constituted gross negligence or willful misconduct; <u>provided</u>, that each Exculpated

Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant

to, or in connection with, the Plan; <u>provided further</u>, that the Exculpation shall not apply to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, except for acts or omissions of Releasing Parties.

34.     Each of the Debtor Releases, the Third Party Releases, and the injunction and exculpation provisions set forth in the Plan:  (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into or set forth in the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, the Estates, and their Creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, and other applicable law.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Releases, the Third Party Releases, and the injunction and exculpation provisions contained in Article X of the Plan.

35.     **Preservation of Claims and Causes of Action**.  Article VI.T of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The provisions regarding Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

**2.     Section 1129(a)(2)—Compliance of the Debtors and Others With the Applicable Provisions of the Bankruptcy Code.**

36.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code,

including sections 1122, 1123, 1124, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019.

37.    Votes to accept or reject the Plan were solicited by the Debtors and their respective present and former members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

38.    The Debtors and their respective present and former members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X.F of the Plan.

39.    The Debtors and their respective present and former members, officers, directors, employees, advisors, attorneys, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the issuance and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

### 3.     Section 1129(a)(3)—Proposal of Plan in Good Faith.

40.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and records of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

41.     The Plan is the product of arm's-length negotiations between, among other Entities, the Debtors and each party to the Global Resolution and the Restructuring Agreement. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of Holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### 4.     Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable.

42.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

5.    **Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

43.    The Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code because, in the Disclosure Statement, the Plan, and the Plan Supplement, the Debtors have disclosed (a) the identity and affiliations of each proposed director, the President, and the General Counsel and (b) the identity of and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors.  The method of appointment of directors and officers of the Debtors was and is consistent with the interests of Holders of Claims and Interests and public policy.    Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied.

6.    **Section 1129(a)(6)—Approval of Rate Changes.**

44.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission.  Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

7.    **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

45.    The liquidation analysis attached as Exhibit E to the Disclosure Statement (the "Liquidation Analysis") and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered;  (b) utilize reasonable and appropriate methodologies and assumptions;  (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims in every Class will recover as much or more under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under

chapter 7 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(a)(7) of the

Bankruptcy Code are satisfied.

        **8.**       **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class.**

      46.      Because the Plan has not been accepted by Class A-7, the Debtors seek

Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.

Thus, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to

Class A-7, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and

equitable with respect to Class A-7 and thus satisfies section 1129(b) of the Bankruptcy Code as

described further below.  As a result, the requirements of section 1129(b) of the Bankruptcy

Code are satisfied.

        **9.**       **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

      47.      The treatment of Allowed Administrative Expense Claims, Allowed Priority Tax

Claims, and Allowed Priority Non-Tax Claims under Articles II and IV of the Plan satisfies the

requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

Accordingly, the requirements of section 1129(a)(9) of the Bankruptcy Code are satisfied.

        **10.**     **Section 1129(a)(10)—Acceptance By At Least One Impaired Class.**

      48.      As set forth in the Voting Certifications, all of the Voting Classes have voted to

accept the Plan.  Specifically, Holders of Claims in Classes A-1, A-2, A-5, B-1, B-2, B-5, C-1,

C-2, C-5, and C-6 voted to accept the Plan.  As such, there is at least one Class of Claims that is

Impaired under the Plan and has accepted the Plan, determined without including any acceptance

of the Plan by any insider (as defined by the Bankruptcy Code).  Accordingly, the requirements

of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

**11.     Section 1129(a)(11)—Feasibility of the Plan.**

49.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in affidavits or declarations filed in connection with, the Confirmation Hearing:  (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan except as provided in the Plan; (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan; and (f) establishes that all of the conditions to effectiveness of the Plan are likely to be met and the Plan will be able to become effective.  Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

**12.     Section 1129(a)(12)—Payment of Bankruptcy Fees.**

50.     Article XV.C of the Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. Accordingly, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

**13.     Section 1129(a)(13)—Retiree Benefits.**

51.     Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to

section 1114 of the Bankruptcy Code.  Article VI.R of the Plan provides that, on and after the Effective Date, all retiree benefits, if any, shall continue to be paid in accordance with applicable law.  Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

**14.    Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class.**

52.    Notwithstanding the fact that Class A-7 is Impaired and deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because: (a) the Voting Classes have all voted to accept the Plan; and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to Class A-7.  As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.  Thus, the Plan may be confirmed even though section 1129(a)(8) of the Bankruptcy Code is not satisfied as to Class A-7.  After entry of the Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of Class A-7.

**15.    Section 1129(c)—Only One Plan.**

53.    Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**16.    Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes.**

54.    No governmental unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

N.     Satisfaction of Confirmation Requirements.

55.     Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

O.     Good Faith.

56.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purposes of reorganizing the Debtors' ongoing business and maximizing the value of each of the Debtors and the recovery to stakeholders.   The Plan gives effect to many of the Debtors' restructuring initiatives, including debt reduction and the legislative initiatives outlined in Section III.A of the Restructuring Agreement.   Accordingly, the Debtors and each party to the Restructuring Agreement (and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, Affiliates, and representatives) have been and are acting in good faith as they proceed to:   (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by the Confirmation Order.   Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

P.     Disclosure:  Agreements and Other Documents.

57.     The Debtors have disclosed all material facts regarding:  (a) the adoption of the Amended and Restated Certificate of Incorporation and the Amended and Restated Bylaws of each of the Reorganized Debtors or similar constituent documents; (b) the selection of directors and officers for the Reorganized Debtors; (c) the distribution of Cash; (d) the issuance of new equity in the Reorganized Debtors consisting of New Common Stock; (e) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Reorganized Debtors; (f) the Management

Incentive Plan; (g) the exemption under section 1146(a) of the Bankruptcy Code; and (h) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

Q.    <u>Transfers by Debtors; Vesting of Assets.</u>

58.    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure any indebtedness that is Unimpaired by the Plan).  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

R.    <u>Conditions to Effective Date.</u>

59.    Entry of the Confirmation Order, in form and substance reasonably acceptable to the Debtors, shall satisfy the conditions to the Effective Date as set forth in Articles XII.A.1-3 of the Plan, subject to the condition in Articles XII.A.1-3 of the Plan that the Confirmation Order shall not have been stayed or modified or vacated on appeal.

S.    <u>Likelihood of Satisfaction of Conditions Precedent to Consummation.</u>

60.    Each of the conditions precedent to the Effective Date, as set forth in Article XII.A of the Plan, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied.

T.      Implementation.

61.      All documents and agreements necessary to implement the Plan, including those

contained in the Plan Supplement, and all other relevant and necessary documents, have been

negotiated in good faith, at arm's-length, and are in the best interests of the Debtors and the

Reorganized Debtors and shall, upon completion of documentation and execution, be valid,

binding, and enforceable documents and agreements not in conflict with any federal or state law.

62.      The New Senior Secured Credit Facility is being executed in good faith, for

legitimate business purposes, is reasonable, and shall not be subject to recharacterization for any

purposes whatsoever and shall not constitute a preferential transfer or fraudulent conveyance

under the Bankruptcy Code or any other applicable nonbankruptcy law.  On the Effective Date,

all of the liens and security interests to be granted, the guarantees to be given, and the documents

to be entered into, in connection and in accordance with the New Senior Secured Credit Facility

shall be deemed approved and shall be legal, valid, binding, and enforceable. The security

interests and liens granted, the guarantees to be given and the documents to be entered into in

connection and in accordance with the New Senior Secured Credit Facility shall not be subject to

recharacterization for any purposes whatsoever and shall not constitute a preferential transfer or

fraudulent conveyance under the Bankruptcy Code or any other applicable nonbankruptcy law.

The Debtors and/or Reorganized Debtors and the persons granted such liens, security interests

and claims are authorized to make all filings and recordings, and to obtain all governmental

approvals and consents necessary to establish and perfect such liens, security interests and

guarantees under the provisions of the applicable state, provincial, federal, or other law (whether

domestic or foreign) that would be applicable in the absence of this Order. All reasonable and

documented fees, costs, and expenses paid in connection with the New Senior Secured Credit

Facility (including the filing or recordation thereof), and all documents to be executed and delivered in connection therewith, are hereby ratified and approved.

63.    On the Effective Date, all of the liens, security interests and guarantees that were granted or made in connection with, and to secure and evidence, the Second Lien Facility, the Second Lien Facility Claims and the Second Lien Facility Guaranty Claims shall be terminated, cancelled and annulled (of record, and otherwise).    The Debtors and/or Reorganized Debtors, the Second Lien Agent, the Second Lien Lenders and all persons granted any Second Lien Facility Claims and Second Lien Facility Guaranty Claims are authorized to execute and deliver all documents, and make all filings and recordings, necessary or deemed advisable to evidence such termination, cancellation and annulment.    All reasonable and documented fees, costs, and expenses paid in connection with the cancellation, termination and annulment (of record, and otherwise) of the Second Lien Facility, and the filing or recordation of terminations (including, without limitation, termination of any mortgages and financing statements recorded or filed in connection with the Second Lien Facility), are hereby ratified and approved.

64.    On the Effective Date, any and all mechanic's liens that have been filed against the property of any Debtor or any Debtor shall be terminated, cancelled and annulled (of record and otherwise).    All reasonable and documented fees, costs, and expenses paid in connection with the cancellation, termination and annulment (of record and otherwise) of such mechanic's liens, and the filing or recordation of any terminations related thereto, are hereby ratified and approved.

U.    Issuance of New Common Stock.

65.    The issuance of New Common Stock is an essential element of the Plan, and is in the best interests of the Debtors, their Estates, and their Creditors.    The Reorganized Debtors' equity interests shall consist of New Common Stock and reinstated Intercompany Interests.

V.     <u>Reinstatement.</u>

66.     The Secured Claims and Intercompany Claims against each of the Debtors, as well as the Intercompany Interests in BLB Management Services and UTGR, are Unimpaired in accordance with section 1124 of the Bankruptcy Code.

W.     <u>Retention of Jurisdiction.</u>

67.     The Bankruptcy Court properly may retain jurisdiction over the matters set forth in Article XIV and other applicable provisions of the Plan.

\*     \*     \*     \*     \*

## II.   **ORDER**

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

A.   Order.

68.   This Confirmation Order shall confirm the Plan, except where inconsistent with the terms of this Confirmation Order, and to the extent inconsistent, the terms of this Confirmation Order shall control.  A copy of the Plan is attached hereto as **Exhibit A**.

B.   Objections.

69.   To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been withdrawn, waived, or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits.

C.   Findings of Fact and Conclusions of Law.

70.   The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.   All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated herein to the extent not inconsistent herewith.   To the extent that any of the following constitute findings of fact or conclusions of law, they are adopted as such.   To the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

D.   Confirmation of the Plan.

71.   The Plan and Plan Supplement (as such may be amended by the Confirmation Order or in accordance with the Plan) and each of their provisions are confirmed in each and

every respect pursuant to section 1129 of the Bankruptcy Code.  The documents contained in the

Plan Supplement, and any amendments, modifications, and supplements thereto, and all

documents and agreements related thereto (including all exhibits and attachments thereto and

documents referred to in such papers), and the execution, delivery, and performance thereof by

the Reorganized Debtors, are authorized and approved as finalized, executed, and delivered.

Without further order or authorization of the Bankruptcy Court, the Debtors, Reorganized

Debtors, and their successors are authorized and empowered to make all modifications to all

documents included as part of the Plan Supplement that are consistent with the Plan.  As set forth

in the Plan and this Order, once finalized and executed, the documents comprising the Plan

Supplement, the documents, agreements, or instruments governing (i) the holders of the New

Common Stock upon issuance thereof (including the Shareholders Agreement (as defined

below)) and (ii) the Second Lien Facility Claim Contingent Value Right, and all other documents

contemplated by the Plan shall constitute legal, valid, binding, and authorized obligations of the

respective parties thereto, enforceable in accordance with their terms (without further action if

such document, agreement, or instrument so provides) and, to the extent applicable, shall create,

as of the Effective Date, all Liens and other security interests purported to be created thereby.

Each of the Debtors, Reorganized Debtors, the First Lien Agent, and the Second Lien Agent, and

all officers or responsible representatives of any of the foregoing, are hereby authorized and

directed to take all necessary or appropriate steps, and perform all necessary or appropriate acts,

to consummate the terms and conditions of the Plan and this Order, including without limitation,

the execution, delivery, adoption, assignment, amendment, filing, or recording, as the case may

be, of any and all agreements, documents, and instruments necessary or desirable to implement

the Plan and this Order and to effect any other transactions contemplated therein or thereby.

72.     The terms of the Plan, the Plan Supplement, and exhibits thereto are incorporated by reference into, and are an integral part of, the Confirmation Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan.

E.     Plan Classification Controlling.

73.     The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors and Reorganized Debtors except for voting purposes.

F.     Compromise and Settlement.

74.     On and after the Effective Date, the Debtors may compromise and settle Claims against them and Causes of Action against other Entities in accordance with the provisions of the Plan,                            pursuant                            to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court.

G.     The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.

75.     The following releases, injunctions, exculpations, and related provisions set forth in Article X of the Plan are hereby approved and authorized in their entirety:

1.      **Releases by the Debtors.**

On the Effective Date and effective as of the Effective Date, for the good and valuable consideration provided by each of the Debtor Releasees (as defined below), including:  the discharge of debt and cancellation of Equity Interests and all other good and valuable consideration transferred pursuant to the Plan, and the service of the Debtors' present and former officers and directors in facilitating the expeditious implementation of the restructuring contemplated by the Plan, each of the Debtors shall provide a full discharge and release to each Released Party, including each other Debtor, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates and representatives, including the Sponsor Entities and Sponsor Representatives (collectively, the "Debtor Releasees" (and each such Debtor Releasee so released shall be deemed released and discharged by the Debtors)), and their respective properties from any and all Causes of Action, whether known or unknown, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors, including those that any of the Debtors or Reorganized Debtors would have been legally entitled to assert against a Debtor Releasee in its own right (whether individually or collectively) or that any Holder of a Claim or Interest or other Entity would have been legally entitled to assert on behalf of any of the Debtors or in its own right or any of their Estates or against any Released Party, including those in any way related to the Chapter 11 Cases or the Plan to the fullest extent of the law; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release  (i) any Person or Entity (including any Released Party) from any Causes of Action arising out of the willful misconduct or gross negligence of any such Person as determined by a final order entered by a court of competent jurisdiction and (ii) any person or Entity other than a Released Party from any causes of action expressly set forth in and preserved by the Plan.  Notwithstanding anything in the Plan to the contrary, the Debtors or the Reorganized Debtors will not release any Causes of Action that they may have now or in the future against any non-Released Party.

2.      **Third Party Releases.**

On the Effective Date and effective as of the Effective Date, the Holders of Claims and Interests shall be deemed to provide a full discharge and release to the Debtor Releasees and the First Lien Agent (for the purposes of this paragraph, on behalf of itself and the First Lien Lenders) and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors or the First Lien Agent (in its capacity as administrative agent under the First Lien Facility), including those in any way related to the Chapter 11 Cases, the Plan or the First Lien Facility; provided, that the foregoing "Third Party Release" shall not operate to waive or release (i) any Person or Entity (including the Debtor Releasees and the First Lien Agent) from any Causes of Action arising out of the willful misconduct or gross negligence of any such Person as determined by a final order entered by a court of competent jurisdiction and (ii) any Person or Entity (other than a Debtor Releasee or the First Lien Agent) from any Causes of Action expressly set forth in and preserved by

the Plan, the Plan Supplement or related documents. Notwithstanding anything in the Plan to the contrary, the Holders of Claims and Interests will not release any Causes of Action that they, the Debtors or the Reorganized Debtors may have now or in the future against the non-Released Parties. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Release, and further, shall constitute its finding that the Third Party Release is: (1) in exchange for the good and valuable consideration provided by the Debtor Releasees and the First Lien Agent, a good faith settlement and compromise of the claims released by the Third Party Release; (2) in the best interests of the Debtors and all Holders of Claims; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Holders of Claims and Interests asserting any claim released by the Third Party Release against any of the Debtor Releasees or the First Lien Agent.

Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including any claim arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States Government or any of its agencies or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatsoever, including without limitation any claim, suit or action arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state and local authority against the Released Parties. This paragraph, however, shall in no way affect or limit the discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code.

3.      Injunction.

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner, any Cause of Action released or to be released pursuant to the Plan or the Confirmation Order.

4.      Exculpation.

The Exculpated Parties shall neither have nor incur any liability to any Entity for any Prepetition or Postpetition act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Effective Date of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other Prepetition or Postpetition act

taken or omitted to be taken in connection with or in contemplation of the restructuring of the Company; **provided**, that the foregoing provisions of this exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a final order to have constituted gross negligence or willful misconduct; **provided**, **further**, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; **provided**, **further**, that the foregoing "**Exculpation**" shall not apply to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, except for acts or omissions of the Releasing Parties.

H.    Release of Liens.

76.    Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates, including, without limitation, any and all mechanic's liens against any Debtor or any property of any Debtor, shall be fully released, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

I.    Maintenance of Causes of Action.

77.    The provisions of Article VI.T of the Plan are hereby approved in their entirety. Subject to the releases set forth in Article X.C and Article X.D of the Plan, and in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.

78.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

J.    <u>Post-Confirmation Notices, Professional Compensation, and Bar Dates.</u>

1.    **Notice of Entry of the Confirmation Order.**

79.    In accordance with Bankruptcy Rules 2002 and 3020(c), within ten Business Days of the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; <u>provided</u>, <u>however</u>, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. To supplement the notice described in the preceding sentence, within 20 days of the date of the Confirmation Order, the Debtors shall publish the Notice of Confirmation once in <u>The Providence Journal</u>.  Mailing and publication of the Notice of Confirmation in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

80.    The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order to such filing and

recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**2.      Professional Compensation.**

81.      All final requests for Professional Compensation and Reimbursement Claims shall be Filed no later than 90 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional Compensation and Reimbursement Claims shall be determined by the Bankruptcy Court.

82.      On the Effective Date, the Reorganized Debtors shall fund the Holdback Escrow Account with Cash equal to the aggregate Holdback Amount for all Professionals.   The Holdback Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Professional Fee Order.  Such funds shall not be considered property of the Reorganized Debtors.   The remaining amount of Professional Compensation and Reimbursement Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Holdback Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by a Bankruptcy Court order.  When all Claims by Professionals have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to the Reorganized Debtors.

83.      To receive payment for unbilled fees and expenses incurred through the Effective Date, on or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors.  If a Professional does not provide an estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; provided, however, that such estimate shall

not be considered an admission with respect to the fees and expenses of such Professional.  The total amount so estimated as of the Effective Date shall comprise the Holdback Amount.

84.     Except as otherwise specifically provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, Professional, or other fees and expenses incurred by that Reorganized Debtor after the Effective Date pursuant to the Plan.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

85.     Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or Reorganized Debtors, as applicable, and as otherwise  required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules.

86.     Unless otherwise ordered by the Bankruptcy Court or specifically provided for in the Plan, all reasonable fees and expenses of the First Lien Agent and Second Lien Agent (and their counsel, agents, and advisors) that are provided for under the respective credit agreements and related documents or agreements, including any unpaid administrative agency fees, shall be paid in full in Cash on the Effective Date without a reduction to the recoveries of applicable Holders of Allowed Claims and without requiring the First Lien Agent, Second Lien Agent, or

any of their counsel, agents, or advisors to file a request for the allowance and payment of an Administrative Expense Claim or a Proof of Claim to receive payment for such fees and expenses.  All disputes related to the fees and expenses of the First Lien Agent and Second Lien Agent (and their counsel, agents, and advisors) shall be subject to the jurisdiction of and decided by the Bankruptcy Court.

87.     Pursuant to the Master Video Lottery Terminal Contract dated July 18, 2005, which provides for UTGR's payment of the Division of Lotteries' costs and expenses associated with the oversight of Twin River, the Debtors shall promptly pay the unpaid, reasonable, documented out-of-pocket fees and expenses incurred by the State in connection with the Chapter 11 Case, without the State or their legal or financial advisors having to file fee applications to receive payment for such fees and expenses.

88.     The Debtors shall pay the unpaid reasonable, documented out-of-pocket fees and expenses incurred by the members of the Creditors' Committee.

### 3.     Other Administrative Expense Claims.

89.     All requests for payment of an Administrative Expense Claim must be Filed with the Notice, Claims and Solicitation Agent and served upon counsel to the Debtors or Reorganized Debtors, as applicable.   The Reorganized Debtors may settle and pay any Administrative Expense Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  In the event that any party with standing objects to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with respect to an Administrative Expense Claim previously Allowed by Final Order.

K.    <u>Exemption from Securities Laws.</u>

90.    The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder) and applicable state securities laws, and no other non-bankruptcy law applies to the solicitation.

91.    Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities pursuant to the Plan and any and all settlement agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code, any Securities contemplated by the Plan and any and all settlement agreements incorporated therein will be freely tradable by the recipients thereof, subject to (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and (b) applicable regulatory approval.

**L.**    <u>Exemptions from Taxation.</u>

92.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, or recording or filing of any mortgage, deed of trust, financing statement or other security interest or instrument, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other

instrument of transfer, or termination executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate federal, state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.    Retention of Jurisdiction.

93.    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

  a.  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

  b.  Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

  c.  Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

  d.  Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

e.  Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

f.  Adjudicate, decide or resolve any and all matters related to Causes of Action;

g.  Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

h.  Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

i.  Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

j.  Resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, unless as otherwise provided in such agreement or agreed to by the parties thereto;

k.  Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

l.  Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

m.  Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

n.  Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

o.  Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement; unless as otherwise provided in such contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement or agreed to by the parties thereto;

p.  Enter an order or Final Decree concluding or closing the Chapter 11 Cases;

q.  Adjudicate any and all disputes arising from or relating to distributions under the Plan;

r.  Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

s.  Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

t.  Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan, unless as otherwise provided in such agreement, document or instrument executed in connection with the Plan or agreed to by the parties thereto;

u.  Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

v.  Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, unless as otherwise provided in such agreement executed in connection with the Plan or agreed to by the parties thereto;

w.  Enforce all orders previously entered by the Bankruptcy Court; and

x.  Hear any other matter not inconsistent with the Bankruptcy Code.

94.    The Bankruptcy Court shall not retain jurisdiction for local, real property and tangible property tax appeals by UTGR, including real property appeals relating to assessed value as of December 31, 2006 and December 31, 2007 pending in Rhode Island Superior Court (CA No. 08-2614), real property appeal relating to assessed value as of December 31, 2008 pending with the Town of Lincoln, tangible property appeal relating to assessed value as of December 31, 2007 pending in Rhode Island Superior Court (CA No. 09-0313), and tangible property appeal relating to assessed value as of December 31, 2008 pending with the Town of Lincoln.

95.    Upon the occurrence of the Effective Date, the Bankruptcy Court shall not have jurisdiction over (i) any dispute arising from activities occurring after the Effective Date between the Reorganized Debtors and the State of Rhode Island under the Master Video Lottery Terminal Contract dated July 18, 2005 (including any successor agreement, the "MVLT Contract"), or (ii) any other disputes relating to the MVLT Contract that otherwise are not subject to the Bankruptcy Court's jurisdiction.

N.    References to Plan Provisions.

96.    The failure specifically to include or to refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent

of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety, except as inconsistent with the terms of this Confirmation Order.

O.     <u>Treatment of Executory Contracts.</u>

97.     The Executory Contract provisions of Article VII of the Plan shall be, and hereby are, approved in their entirety.

P.     <u>Procedures for Resolving Claims and Disputes.</u>

98.     The Claims resolution procedures contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.

Q.     <u>Provisions Governing Distributions.</u>

99.     The distribution provisions of Article IX of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan, the Reorganized Debtors shall make all distributions required under the Plan.

**R.     <u>Board of Directors.</u>**

100.     On the Effective Date and effective as of the Effective Date, all existing directors on the boards of directors of each of the Debtors shall be deemed to have resigned from such positions, including, without limitation, from their positions on any committees of the Debtors' boards of directors without the need for any further notice to or action, order, or approval of the Bankruptcy Court, or other act or action under applicable law.

101.     On the Effective Date and effective as of the Effective Date, the Reorganized Debtors' boards of directors shall be deemed appointed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, or other act or action under applicable law so long as each such director on the Reorganized Debtors' boards of directors is licensed and approved to serve in such office by the State of Rhode Island Department of Business Regulation and the Lottery Division of the Department of Revenue (collectively, the "<u>Licensing</u>

Authorities"), and in the event that any of the individuals appointed to the Reorganized Debtors'

board of directors is not licensed or approved by the Licensing Authorities as of the Effective

Date, the holders of the New Common Stock shall elect alternative directors that are licensed and

approved by the Licensing Authorities.

**S.   New Common Stock.**

102.   In accordance with the terms of Article VI.B of the Plan and this Order, the

Reorganized Debtors shall issue, deliver, or execute, as the case may be, all securities, notes,

instruments, certificates, and other documents required to be issued pursuant to the Plan,

including, without limitation, the New Common Stock, which shall be distributed to Holders of

Claims in Classes A-1, B-1, and C-1 (collectively, the "First Lien Claimholders") as provided in

the Plan and governed in accordance with such agreements, instruments, or documents that the

Distribution Agent or the First Lien Agent shall deliver to the First Lien Claimholders on or

before the Effective Date.   The distribution of New Common Stock to the First Lien

Claimholders and the receipt, ownership, and vesting of the New Common Stock by or in each of

the First Lien Claimholders shall be conditioned on the execution by each of the First Lien

Claimholders of a shareholders agreement that the Distribution Agent or the First Lien Agent

shall deliver to the First Lien Claimholders on or before the Effective Date (the "Shareholders

Agreement") via the Intralinks data site maintained by the First Lien Agent for the benefit of the

First Lien Claimholders.   In the event that any First Lien Claimholder fails to execute the

Shareholders Agreement within the time period prescribed by the Distribution Agent or First

Lien Agent, such First Lien Claimholder shall serve upon the Distribution Agent or First Lien

Agent, as applicable, via first-class U.S. mail or overnight mail a written objection stating in

reasonably sufficient detail its reasons for failing to so execute the Shareholders Agreement

before the expiration of such time period, and such First Lien Claimholder and the Distribution

Agent or First Lien Agent, as applicable, shall commence good-faith negotiations to resolve such objection within a period of 21 days commencing on the date following the service of such objection (such 21-day period, the "Resolution Period").  The portion of New Common Stock allocable to such objecting First Lien Claimholder shall be held in escrow by a third party escrow agent to be selected by the Reorganized Debtors (in consultation with the First Lien Agent or Distribution Agent, as applicable) pending the resolution of the objection of such First Lien Claimholder.  Should any such objection be unresolved as of the termination of the Resolution Period, such Resolution Period may be extended by mutual agreement of the parties or such objection shall be resolved in accordance with the terms of the First Lien Facility.  Any First Lien Claimholder that fails to comply with the procedures set forth in this paragraph shall be forever barred from asserting any claims, causes of action, or rights against the Reorganized Debtors, the Distribution Agent, and the First Lien Agent with respect to the New Common Stock or the Shareholders Agreement.  Upon issuance, all shares of New Common Stock are deemed validly issued, fully paid, and non-assessable and any agreement, instrument, or document governing such shares delivered pursuant to the Plan or this Order (including the Shareholders Agreement) shall be valid, binding upon the First Lien Claimholders, and enforceable in all respects.

T.     Second Lien Facility Claim Contingent Value Right

103.    In accordance with the terms of Article VI.E of the Plan and this Order, the Reorganized Debtors shall issue, deliver, or execute, as the case may be, the Second Lien Facility Claim Contingent Value Right, which shall be distributed to Holders of Claims in Classes A-2, B-2, and C-2 (collectively, the "Second Lien Claimholders") as provided in the Plan and governed in accordance with such agreements, instruments, or documents that the Distribution Agent or the Second Lien Agent shall deliver to the Second Lien Claimholders on or

before the Effective Date.  The distribution of the Second Lien Facility Claim Contingent Value Right to the Second Lien Claimholders and the receipt, ownership, and vesting of the Second Lien Facility Claim Contingent Value Right shall be conditioned on the execution by each of the Second Lien Claimholders of such instruments, agreements, or documents, none of which shall be inconsistent with the terms of the Plan, governing such Second Lien Facility Claim Contingent Value Right that the Distribution Agent or the Second Lien Agent shall deliver to the Second Lien Claimholders on or before the Effective Date.  In the event that any such Second Lien Claimholder fails to execute such instruments, agreements, or documents within the time period prescribed by the Distribution Agent or Second Lien Agent, the Reorganized Debtors reserve the right to cancel the portion of the Second Lien Facility Claim Contingent Value Right allocable to such Second Lien Claimholder and any such Second Lien Claimholder that fails to comply with the procedures set forth in this paragraph shall be forever barred from asserting any claims, causes of action, or rights against the Reorganized Debtors, the Distribution Agent, and the Second Lien Agent with respect to the Second Lien Facility Claim Contingent Value Right. Upon issuance, the Second Lien Facility Claim Contingent Value Right shall be deemed validly issued and non-assessable and any agreement, instrument, or document governing such Second Lien Facility Claim Contingent Value Right delivered pursuant to the Plan or this Order shall be valid, binding upon the Second Lien Claimholders, and enforceable in all respects.

U.    Other Essential Documents and Agreements.

104.    The Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of each of the Reorganized Debtors, the New Senior Secured Credit Facility (and the mortgage, guarantees and collateral agreements, financing statements and other documents executed and/or delivered in connection therewith), any documents evidencing the termination and cancellation of the Second Lien Facility, the Second Lien Facility Claim

Contingent Value Right, and the transactions contemplated by each of the foregoing are approved in their entirety and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the Amended and Restated Certificate of Incorporation and Amended and Restated Bylaws of each of the Reorganized Debtors, the New Senior Secured Credit Facility (and the mortgage, guarantees and collateral agreements, financing statements and other documents executed and/or delivered in connection therewith), and the Second Lien Facility Claim Contingent Value Right shall be in full force and effect and valid, binding, and enforceable in accordance with their terms without the need for any further notice to or action, order, or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order, or rule.  The Debtors, and after the Effective Date, the Reorganized Debtors, are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, documents, instruments, securities, and certificates relating to the foregoing or to any such agreements and perform their obligations thereunder, including, without limitation, pay all fees due thereunder or in connection therewith.

105.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

V.    <u>Governing Law.</u>

106.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the

State of Rhode Island, without giving effect to the principles of conflict of laws, shall govern the

rights, obligations, construction, and implementation of the Plan, any agreements, documents,

instruments, or contracts executed or entered into in connection with the Plan (except as

otherwise set forth in those agreements, in which case the governing law of such agreement shall

control), and corporate governance matters; provided, however, that corporate governance

matters relating to Debtors or Reorganized Debtors, as applicable, not incorporated in the State

of Rhode Island shall be governed by the laws of the state of incorporation of the applicable

Debtor or Reorganized Debtor, as applicable.

W.     Effectiveness of All Actions.

107.     Except as set forth in the Plan, all actions authorized to be taken pursuant to the

Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation

Order, without further application to, or order of the Bankruptcy Court, or further action by the

respective officers, directors, members, or stockholders of the Reorganized Debtors and with the

effect that such actions had been taken by unanimous action of such officers, directors, members,

or stockholders.

X.     Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.

108.     Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware

General Corporation Law and any comparable provision of the business corporation laws of any

other state, each of the Debtors and the Reorganized Debtors hereby is authorized and

empowered to take such actions and to perform such acts as may be necessary, desirable, or

appropriate to comply with or implement the Plan, the Plan Supplement, any other Plan

documents, including the election or appointment, as the case may be, of directors and officers of

the Reorganized Debtors as contemplated in the Plan, and all documents, instruments, securities

and agreements related thereto and all annexes, exhibits, and schedules appended thereto, and the

obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or board of directors' approval.  Each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions, to perform all acts, to make, execute, and deliver all instruments and documents, and to pay all fees and expenses as set forth in the Plan and the documents relating to the Plan, and that may be required or necessary for its performance thereunder without the need for any stockholder or board of directors' approval (including, without limitation, in connection with the execution and delivery of the documents evidencing and securing the New Senior Secured Credit Facility and the documents evidencing the termination and cancellation of the Second Lien Facility).  On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the Board of Directors of the Reorganized Debtors are authorized and empowered to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors (including, without limitation, in connection with the execution and delivery of the documents evidencing and securing the New Senior Secured Credit Facility and the documents evidencing the termination and cancellation of the Second Lien Facility).  Subject to the terms of this Confirmation Order, each of the Debtors, the Reorganized Debtors, and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of the Debtors or the Reorganized Debtors.  On the Effective Date, or as soon thereafter as is practicable, each of the Reorganized Debtors shall file its amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business law of each such jurisdiction.

109.   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto (including, without limitation, in connection with the execution and delivery of the documents evidencing and securing the New Senior Secured Credit Facility and the documents evidencing the termination and cancellation of the Second Lien Facility).

Y.   Modifications or Amendments.

110.   Except as otherwise specifically provided in or otherwise consistent with the Plan, and subject to the conditions to the Effective Date, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw or to alter, amend or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIII.A of the Plan.  Entry of the Confirmation Order means that all modifications or amendments to the Plan

since the solicitation thereof are approved pursuant to section 1127 of the Bankruptcy Code and

do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

Z.   Effect of Conflict Between Plan and Confirmation Order.

111.   If there is any direct conflict between the terms of the Plan or the Plan

Supplement and the terms of the Confirmation Order, the terms of the Confirmation Order shall

control.

AA.   Payment of Statutory Fees.

112.   All fees payable pursuant to section 1930(a) of the Judicial Code, as determined

by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be

paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted,

dismissed or closed, whichever occurs first.

BB.   Reservation of Rights.

113.   Except as expressly set forth in the Plan, the Plan shall have no force or effect

unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan,

any statement or provision contained in the Plan, or the taking of any action by any Debtor with

respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed

to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or

Interests prior to the Effective Date.

CC.   Injunctions and Automatic Stay.

114.   Unless otherwise provided in the Plan or herein, all injunctions or stays in effect

in the Chapter 11 Cases pursuant to section 105, 362, or 525 of the Bankruptcy Code or

otherwise, or any order of the Court, and extant on the date of this Confirmation Order

(excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall

remain in full force and effect until the Effective Date.  All injunctions or stays contained in the

Plan or herein shall remain in full force and effect in accordance with their terms.  This Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights, or liabilities released pursuant to the Plan.

DD.    Nonseverability of Plan Provisions upon Confirmation.

115.    Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Bankruptcy Court is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and the transactions related thereto and may not be deleted or modified without the consent of the Debtors; and (c) nonseverable and mutually dependent.

EE.    Waiver or Estoppel.

116.    Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

FF.    Authorization to Consummate.

117.    The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article XII.A of the Plan.

GG.    Secured Tax Claims.

118.    Interest on Secured Claims shall accrue from the Petition Date through the

Effective Date at the rate set forth in the contracts or other applicable documents giving rise to

such Claims (to the extent lawful) or, if the applicable instruments do not specify a rate of

interest, at the Federal Judgment Rate as provided for in 28 U.S.C. § 1961 as in effect on the

Petition Date, or to the extent provided for by section 511 of the Bankruptcy Code, interest at the

rate determined under applicable nonbankruptcy law.

HH.    New England Teamsters and Trucking Industry Pension Fund

119.    Notwithstanding anything to the contrary contained in the Plan, any Claim or

liability (including, but without limitation, any liability or Claim for withdrawal liability under

29 U.S.C. §§ 1383 and 1385) of the Debtors or any third-party to the New England Teamsters

and Trucking Industry Pension Fund ("New England Pension Fund"), a multi-employer plan as

that term is defined by 29 U.S.C. § 1301(a)(3), if any, but excluding Claim 13 for an unpaid

payroll audit filed by the New England Pension Fund, is contingent and is left unimpaired under

the Plan, shall not be discharged and shall continue unaltered, nor shall any third-party be

released from any liability or Claim that the New England Pension Fund may have against any

third-party as a result of any one of the Debtors' participation in the New England Pension Fund.

Notwithstanding the foregoing, nothing contained herein shall alter or impair the rights or

defenses of the Debtors or Reorganized Debtors under the Bankruptcy Code or other applicable

law (including, but not limited to, ERISA § 4225).

II.    Resolution of Barrows Objection.

120.    Nothing contained in the Plan or any other related document or order shall

preclude Kevin and Edward Barrows, as plaintiffs in the civil action pending in the Rhode Island

Superior Court (Providence County) captioned "Kevin Barrows and Edward Barrows vs.UTGR,

Inc., d/b/a Twin River Casino, Nicholas Santoro, and John Doe," C.A. 09-056 (the "Barrows

Action"), from suing and from otherwise pursuing recovery against employees of the Debtors, in

their personal and individual capacities, including for acts outside of the scope of those

employees' employment with the Debtors, in connection with the Barrows Action.

JJ.    Effect of Non-Occurrence of Conditions to the Effective Date.

121.    Each of the conditions to the Effective Date must be satisfied or duly waived, and

the Effective Date must occur within 180 days after Confirmation, or by such later date

established by Bankruptcy Court order.  If the Effective Date has not occurred within 180 days

of Confirmation, then upon motion by a party-in-interest made before the Effective Date and a

hearing, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however,

that, notwithstanding the Filing of such motion to vacate, the Confirmation Order may not be

vacated if the Effective Date occurs before the Bankruptcy Court enters an order granting such

motion.  If the Confirmation Order is vacated, then except as provided in any order of the

Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects,

including the discharge of Claims and termination of Interests pursuant to the Plan and section

1141 of the Bankruptcy Code and the assumptions, assignments or rejections of Executory

Contracts, and nothing contained in the Plan or Disclosure Statement shall:  (a) constitute a

waiver or release of any Claims, Interests or Causes of Action; (b) prejudice in any manner the

rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer

or undertaking of any sort by such Debtor or any other Entity.

KK.    Notice of Effective Date

122.    Within ten days of satisfaction of the conditions precedent to occurrence of the

Effective Date, the Debtors shall file and serve upon all creditors and parties in interest a notice

indicating all conditions precedent to the Effective Date have been satisfied and setting the Effective Date.

LL.    <u>Final Report and Request for Final Decree</u>

      123.    Pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 3022, within six months of the entry of the Confirmation Order, or, if sooner, upon the substantial consummation of the Plan and full administration of the estate, the Debtors are required to file with the Clerk of Court, and to serve upon all interested parties, a final report and request for final decree (the "<u>Final Report</u>").  The Final Report must: (a) identify all payments to creditors, interest holders, expenses of administration, and issuance of stock under the Plan; (b) state that the Plan has been fully or substantially consummated and the estate is fully administered; and (c) request entry of a final decree.  If after the expiration of six months the Debtor does not believe it has substantially consummated the Plan, a status report (the "<u>Status Report</u>") must be filed to inform the Court and interested parties of: (x) the progress and status of the Plan to date; (y) why the filing of the Final Report cannot be made at this time; and (z) the date the Final Report will be filed.  Failure to file either the Final Report or the Status Report within the prescribed six month period will automatically result in the issuance of an Order to show cause and possible imposition of sanctions.

**IT IS SO ORDERED.**

Dated: <u>June 24</u>, 2010
        Providence, Rhode Island

_____
Henry J. Boroff
United States Bankruptcy Judge